May it please the court, my name is Melissa Winberg and I'm representing Mr. Esquivel here today. Mr. Esquivel was denied his Sixth Amendment right to counsel in his criminal case when his counsel failed to inform him that he had a right not to participate in a court-ordered psychosexual evaluation. That evaluation was then used significantly in a 30-year sentence with 15 years before he's eligible for parole. Everybody agreed that that was inappropriate, right? That's correct. Both sides say it was a violation. Yes. But the real issue is not that. These are very interesting issues you have. But we go up the hill without a payload unless there's prejudice. Correct. And as I understand the district court judge did not consider the PSE and so he's not eligible for parole. And so the sentence wasn't increased or decreased because of the PSE. Now if that's the record, tell me where the prejudice comes. In the post-conviction proceeding, Judge Copsey who was the post-conviction judge as well as the sentencing judge essentially rewrote the record to say I did not consider the psychosexual evaluation. Counsel, I read her remarks actually with some care to see because I realized that she seemed to go back and forth a little bit on that. And the way I read it, she might have looked at the record as bolstering what she was, or the psychosocial evaluation as bolstering what she was inclined to do anyway. But she seemed quite clear that she thought the guy is a child molester and he flat out lied at trial and I was the trial judge and I saw him lying and really didn't matter what the psychosocial evaluation did except for possibly making her more confident in what she was doing and going to do anyway. Why can't it be read that way? We do have to defer to the state court so it seems to me that why can't it be read that way would be the appropriate question. I think first we do get to de novo review because of the factual determinations that were unreasonable. I'm sorry I missed some words in what you said. I think we do get to de novo review of the issue because of the unreasonable factual determinations in the state court. What unreasonable factual determinations? The last recent decision was the Idaho Court of Appeals which made a decision based on no evidence. They found that the psychosocial evaluation was not materially unfavorable. They ignored the record. They had the sentencing transcript in front of them. They did not look at it. They applied essentially an irrebuttable presumption. They had it in front of them. How do you know they didn't look at it? They never considered it. They never addressed it in their opinion. They deleted it. You're inferring from they're not talking about something that they didn't look at it. Yes, in the first opinion they addressed. Why is that a reasonable inference? We don't talk about a whole lot that's in the briefs and the excerpts when we write a decision. The only basis in the second amended appeal for the denial, for the finding that the psychosexual evaluation was unfavorable was that it was missing. And in their first opinion they said we are making this finding based on both the sentencing transcript and the psychosexual evaluation missing from the record. Therefore we have nothing to evaluate your claim on. I remember what they did is they quoted Idaho law and they said the burden was on Esquivel to get it in the record. He didn't and Idaho law is that if the defendant appellant does not put something in the record there's a presumption that it would have been adverse to him. That would be a cross statement of Idaho law if the sentencing transcript had not been in the record. Idaho law had never been applied to ignore the rest of the record if there was some evidence supporting the appellant's claim. They would still look beyond the one issue that was missing and they would see is there any other way to support it. That is how the Idaho law had applied it before. In Esquivel they went a step further and they said no we need the psychosexual evaluation, only the psychosexual evaluation. And in that opinion they don't mention the sentencing transcript at all once it was pointed out that it was in the record. So under Jenova review of the prejudice claim I think there are statements that Judge Copsey made in the original sentencing hearing that call into question whether she is simply rewriting the record when she's a post-conviction judge and is evaluating whether the psychosexual evaluation which was uncounseled really affected her determination. And she's going back and subjectively saying I would have given the same sentence. She's in essence giving a re-sentencing even though it's post-conviction. And that's not the standard. It should be objective. And when you look at that sentencing transcript it is clear that the psychosexual evaluation did play a key role. That the prosecutor was arguing about it extensively. There was extremely damaging information that was contained only in the psychosexual evaluation. The prosecutor doesn't get the sentence. Show me what page you want me to look at in the transcript to show that it played a key role insofar as the Superior Court judge's determination was affected. I'm sorry, Your Honor. I don't believe I have that. Prosecutors say a lot of things that don't wind up being important to the jury. On page 201 of the excerpt, when Judge Copsey is addressing the psychosexual evaluation, she states that he was not cooperative and she was concerned. She didn't buy the idea he was uncomfortable answering the question. She is considering that he is not participating and she seems to be offended by that. She says he was aware that this was an important evaluation that the court was going to take into consideration in deciding what to do. And I think throughout her analysis of sentencing, it is clear that the psychosexual evaluation did play a role. And maybe she would have still given him a 30-year sentence, but she would have given him less fixed time. Maybe she would have made him parole eligible in 10 years and not 15. I'm looking at page 201, as you told me to. Correct. And I see the she listened to the testimony. And let's see, where is it? Specifically, on the transcript page number, it's page 270, starting on line 2. Got it. So when I look at all those facts, that's basically the trial. The trial. And the fact that Escobel was really not cooperative with the evaluation, that's because he didn't answer most of the questions. Correct. There's an argument to be made that if a person does this, he's innocent. But she was concerned when he didn't finish part of the test that he was uncomfortable with asking questions. I don't know, I can't see where that's key. She's saying that in addition to the trial, an important thing that's going into the length of the sentence in her ultimate decision is that he was not cooperative and that the results of this evaluation are negative, this psychosexual evaluation. I would like to reserve a few minutes for rebuttal. Okay. Thank you. Okay, we have Mr. Olson for the Attorney General. Thank you, Your Honor. May it please the case that's the subject of the state's Rule 28J letter to this court, Daray v. Lattimore. That case recognized that as of 2015, the United States Supreme Court has not applied Strickland to non-capital sentencing proceedings. Therefore, as in that case, Escobel cannot demonstrate that the Idaho Court of Appeals application of the Hughes standard in this case... There is no holding that Strickland doesn't apply to non-capital sentencing, correct? Yes, I apologize, Your Honor. It's just the United States Supreme Court has not recognized that it has. When you say recognize, you mean it hasn't yet... There is not yet any holding that Strickland applies, but there also is no holding that there's a distinction to be drawn between capital and non-capital. That's correct, Your Honor. Let's assume for purposes of discussion that Strickland does apply, that you're entitled to the effective assistance of counsel in all criminal cases other than petty offenses, just as you're entitled to the appointment of counsel and so forth. Let's just assume that for purposes of discussion. What do you have to show that there's no prejudice? Well, in a sentencing proceeding, I assume that we would do it as we do in Idaho. We look to see whether the counsel's deficiency impacted... Yeah, I'm looking specifically at page 201 of the excerpts that your opposing counsel referred us to. What do you have to show that it just didn't matter? I think if you look around that 201 transcript and read the entire thing, certainly the court talked about that it considered the PSE, but in Idaho, and I assume every state, the court is required to consider the evidence in front of it at sentencing. It doesn't necessarily follow from that, that every single piece of evidence in front of it increased or decreased the sentence. So I would say if you read that, particularly in conjunction with the transcript of the motion for summary dismissal in which the court explained its reasoning for determining that the PSE itself did not increase the sentence, I think... It looked to me, as you know, because I said so in my conversation with your opposing counsel, that the superior court judge kind of went back and forth on that, and it looked like you just wanted to hammer him because he was a child molester who lied at trial. But that's kind of me picking up an inference from the whole gestalt here, and I wonder if there's something specific that supports that inference or something that cuts the same way. Well, yes, Your Honor. Just the other factors that both the prosecutor and the judge talked about... Any reference you can make to actual words is helpful. I think it'd probably be helpful to look at just the district court's summary. How about referring to the specific words by the Idaho judge, because everything else is a secondary source for... Okay. The Idaho judge's sentencing. We can't defer to the district court. I'm sorry, the Idaho trial judge, yes. Page 200 of the record there and page 265 of the transcript is where the court begins its sentencing explanation about the factors it found to be very credible. It talks about that it's considered the facts of the case, that it sat there at trial, that it found this victim very credible. It talks about that it reviewed particularly the CARES tape, which was interviews with the victim that were not admitted at trial, and the court found the victim to be very credible. So from my reading of the court's entire summary here, the court was very persuaded by the facts of the trial, which this trial judge sat through, and also the impact of the victim is discussed. And certainly the court, like I said, does mention the PSC. Well, I think the court mentions the PSI to which the PSC was attached. But of course, Your Honor, like I said, the court is required to reconsider this information. So I don't think it's going back and forth to say that it considered something, but then to later say that ultimately that evidence was not utilized to increase the sentence. Incidentally, what is she talking about, about that CARES tape? I don't know what a CARES tape is. That's part of the, I haven't worked with that, but it's part of sexual abuse victim treatment. It's one of the, it's a state agency that deals with victims of sexual abuse. Mr. Olson, I've got two questions. One, probably pretty simple. The other, that is a little harder for me. The one I think is a simple shot is, is there any particular statement that Mr. Esquivel made in the PSC that was prejudiced, that was considered by the court in sentencing and that was harmful? I don't believe so, Your Honor. And the state district court determined that there was no such statement, and the federal district court found no such statement either. Your Honor, my second question, it's one I'm a little more troubled by, is, is there any substantial possibility that he was in worse circumstances with the court, that he was evaluated somewhat, in part, but then drew lines and wouldn't answer certain questions, as contrasted with the appalling advice of counsel? He had just said, I'm not going there at all. It is interesting because usually we'll have an evaluation or just someone refusing to have an evaluation. I think his omissions here, it wasn't most of the evaluation. And the judge did seem a little bit annoyed and his attorney seemed a little bit surprised, but there was no prejudice from that identified. It's not something that the court talked about in its sentencing summary. It's not something that any prejudice resulted from, as found by the post-conviction court and the federal district court. It provided less information for the sentencing court, I suppose, but I don't think that you can read the sentencing transcript and the summary dismissal hearing transcript in conjunction and find that those omissions were so severe as to cause the trial court to increase Escobel's sentence. Okay. Thank you. When, during the state appeal, was the PSA a part of the record? It was not, Your Honor. What do we do with that? I don't think we need to do anything with that because it's, this was a state appellate law regarding how things get into the record. It's not in, I don't think it's an issue before this court for a couple of reasons. I think that Escobel has tried to frame that as a factual determination and has tried to shoehorn it into that part of AEDPA, but I don't think that that falls under any of the four types of factual determinations recognized by Taylor v. Maddox. So I don't think there's any, there's any, that has no issue in our case. How did the Idaho courts under Idaho law treat an absent exhibit on appeal? They will presume that it supports the, um, the, the lower court's opinion. That it supports the lower court's opinion? Yes. Is that the position that they took in this case? It was, Your Honor. So the end result of that would be a lack of prejudice of the PSA? That's correct, Your Honor. Um, the, because the PSC was not in the record, then the, then the, um, the court of appeals presumed that it supported the state's argument in that case, essentially. What is your position as to whether or not the trial judge in sentencing, um, took the PSC into consideration? Um, it's certainly considered and, and, and, uh, I believe the trial court is required to consider the evidence before that sentencing. And I, I just want to make sure that we distinguish that question from the question of whether the PSC ultimately increased the sentence. So how, how would we, how would we determine that issue? I think the best way to do that in this case is to, um, well, I guess, you know, it goes to whether we're looking at EDPA review or de novo review, but if we're, if, if this court does find there's an unreasonable factual determination here and reviews that PSC, even though it was not in front of the appellate court, um, it's not particularly damaging to Escobel. He doesn't make any admissions. He doesn't, uh, admit any attraction to children. He doesn't admit any new crimes. Um. Did the court ever say whether or not it took into consideration the PSC? The trial court? Yes. Um, I believe that, I believe it's clear that the trial court read and considered the PSC, but it also concluded at the post conviction level that it did not, uh, influence it since it didn't ultimately involve a increased sentence because it didn't provide it any new information that it wasn't already aware of during the trial. Right. So, uh, this is the same judge that held the court, uh, held the trial. And in the post conviction, he said it did not influence me. It didn't increase. It didn't decrease. That's correct. Your honor. Is that a finding of fact that we consider, or is that, how does it fit in? I think it, I think that is, I think that is a finding of facts, um, that was based on its own review of the transcripts of the sentencing hearing and the PSC itself. So I think that is a factual finding. We ordinarily, when a trial, when a trial judge makes a comment, we usually accept it one way or the other, but we accept it. Um, so what evidence is there in the record that's been shown so far, either by, uh, opposing counsel or your review that would indicate any way to impeach the statement of the trial judge, the, did not, that the PSC did not cause him to increase or decrease the sentence? Your honor. I think the best way to do that is to do what the Hughes standard does in Idaho, which is focused on the PSC itself to see whether it's damaging, to see whether it's favorable or unfavorable to Esquivel. And in this case, it doesn't contain any information that wasn't available elsewhere in the record. And it doesn't contain any damning information that the court could have used to increase the sentence. You make that argument in relationship to whether or not the trial judge can be impeached by the statement he made. He, is it a he? It's a she in this case, your honor. She, okay. I have to keep that straight. And the statement she made that it had no influence on the sentence. Yes. I think that we can take the court's comments as, as we should, but in this case, they're also supported by the PSC itself, which is the focus. And there's nothing in the record that shows that the district judge was mistaken or was lying or whatever. There's no, there's no evidence. There's nothing that was, has been presented that would impeach the statement that the judge, the sentencing judge made. No, your honor. I believe that the statements made at sentencing and the statements made at the post-conviction summary dismissal hearing can be read together. There's nothing contradictory there. The court considered the PSC as it was required to do, but it did not ultimately result in increasing Esquivel's sentence because it didn't create, it didn't contain any negative information. So it's your argument. There's no prejudice. So we don't need to get to these intricate problems of whether Strickland applies. Yes. Well, the state would assert that there's no prejudice, whether you look at it under de novo review or at the review. Did Esquivel ever file an affidavit saying if only his lawyer told him he didn't have to, he wouldn't have submitted to the PSC? He did not at the state court level, your honor. And I think that's important because if this, if this court does look at a de novo review of prejudice, we've been focusing on whether the sentence is higher or lower, but if, if this court finds that Hughes is an unreasonable application of Strickland, we're just applying Strickland directly to this. And in that case, we're looking to see whether the result would have been different. And that would certainly, certainly include whether Hughes's participation would have been different. And that's very questionable in this case. My impression is he never said I wouldn't have submitted to it if only my lawyer told me I didn't have to, which means that the claimed ineffective assistance wouldn't have mattered to his participation. And then it looks from what the judge said, like he told the psychosocial examiner and he told the jury the same thing, I didn't do it. Is that about it? That's pretty much it. There was, there was some other, some other questions that he completed some of, but the details of that weren't really discussed. The content, I'm sorry. We're more than three minutes over time loads. The judge's questions have taken you there. Let me ask my colleagues, do you have further questions for Mr. Olson? If not, Mr. Olson, we can let Ms. Winberg take center stage. Could I ask one other question if it's okay? You sent to us the call to our attention, the case of Jerry versus Lattimore. Yes. And I read this, one of our own opinions, I read it and I just wanted to get what you, you gave it to us for, I'm sure an important reason. How will you think that case will assist us in making our decision? Your Honor, that case recognized that, a very recent case recognized that as of 2015, the United States Supreme Court has not held that Strickland applies to non-capital sentencing proceedings. It has never applied Strickland in a non-capital context. And for that reason, Esquivel cannot show an unreasonable application of Strickland under AEDPA in this case because there's no United States Supreme Court precedent indicating that Strickland even applies in the sentencing context. So the state asserts that this case answers the question of whether Esquivel can show unreasonable application under AEDPA. And that's one of our cases. Yes. Okay, no further questions? Thank you, Your Honor. We'll ask Ms. Winberg. Now, Ms. Winberg, you had two minutes, but because the other side went over, we're going to ask the clerk to make your time five minutes. Thank you, Your Honor. I appreciate that. You don't have to use it all. I am very aware of the court's busy schedule. I just wanted to read by a few things that were raised in opposing counsel statements. I think that in the sentencing transcript, you can see that Judge Copsey did make statements that the psychosexual evaluation were harmful at sentencing. Significantly, she credited the psychosexual evaluation statement that Mr. Esquivel was not amenable to treatment as opposed to his statement in court that he didn't really understand what was going on in the psychosexual. And yes, he was amenable to treatment and was willing to do anything the court ordered. The court did talk about his failure to fully answer questions. She says, I don't buy the idea that he was just uncomfortable. He was aware that this wasn't an important evaluation. I think she did use his lack of cooperation against him as an aggravating factor. And if you compare the psychosexual evaluation to the trial transcript and to what's in the pre-sentence report, there's information that is in that psychosexual evaluation that is much more aggravating than is what in any of the other documents. That he was arrogant, that he considered himself a victim of the criminal justice system, that he blamed the victim and her mother, that he denied that he had any substance abuse issues, which Dr. Engel, the evaluator, called into question, doubted that, and that he wasn't amenable to treatment, which I think played a significant factor in the sentencing court's ultimate determination that he should get a 15-year fixed sentence because he was not amenable to treatment. Now the post-conviction court's findings, I believe, are very similar to the Hurls case, where she is essentially testifying through her opinion, where she's not been able to be really cross-examined. She's saying, no, this is what really happened, and I'm drawing on my own personal information that I had as the sentencing judge. And that is not an appropriate fact-finding process. And in Hurls, the remedy was to remand to the federal court for further proceedings on that. I would also say that... Why do you say that, that we shouldn't consider the actual trial judge and what the trial judge was thinking at the time the trial judge made the sentence? I think it can be considered... Well, Strickland is an objective test, but here you have a sentencing which obviously does deal with what was going through the sentencing judge's mind. The problem with the post-conviction decision is that she's not being tested by cross-examination. She is just saying, this is what happened. This isn't an ordinarily fact. This is a decision-maker that's telling you why she made a decision. We don't ordinarily treat that as something that we take and put them on a witness stand, cross-examine them. We don't... We take for granted judges are going to tell the truth about why they did what they did. Is there some case that you have that would allow you to put her on the stand and cross-examine her on that issue? Yes, I believe that the Hurls decision, which I cited in my brief, that decision dealt with judicial bias, but I believe it's very analogous that you have a sentencing judge who, in a post-conviction case in her decision, is actually testifying and saying... So you're saying in all the habeas cases we get that depend on a district judge's findings, we should have the district judge testify under oath subject to cross? Only where the district judge is citing personal... Her own personal beliefs and personal experience. This is why I did this. Yes, yes. You understand, sometimes, I mean, we assume they read everything. I mean, I suppose there are times when they don't, but we don't put them on the stand and cross-examine. We just assume they've done it, they've done their work. Correct. Why would this be different? What's different here is that I think what she's saying in post-conviction is opposed to what she said in the sentence. There is some doubt there that when you look at the sentencing transcript, it appears this was a significant factor. And it calls into question her later statement when she may be trying to avoid post-conviction review, where she says, no, it was not. That would be an extraordinary indignity. Whenever a judge says why they decided something, you put them on the stand under oath and cross-examine them. It seems really novel to me. I've never seen it done. Again, I... That decision that you cited, it was done? Yes. And again, I think it should be limited to situations where the judge is citing her own personal experience in making the decision, rather than relying on these are the facts in the record, and I'm relying on testimony that was presented, which is very typical in a district court case. And I don't want to use up any more of your time. So thank you very much. Good argument. Thank you. I want to congratulate counsel on both sides for their fine arguments, and also thank them for traveling from Boise to visit with us. The case of Esquivel, if you remember, shall be submitted.
judges: Wallace, Kleinfeld and Gould